ANNA TACI *vs.* UNITED STATES RUBBER COMPANY.

MAY 17, 1948.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

**114**

Baker, J. This is an original petition brought under the provisions of the workmen's compensation act, general laws 1938, chapter 300. After a hearing in the superior court the trial justice entered a decree denying and dismissing the petition, and the petitioner has duly prosecuted her appeal to this court.

The decree appealed from contains the following language: "* * * the court finds that the petitioner sustained no injury by accident arising out of and in the course of her employment * * *." The determinative question is whether or not the above finding is correct. The answer to that question, on the record before us, depends upon whether the petitioner suffered an accident within the meaning of that term as used in the workmen's compensation act and as construed by this court. That is the only issue in dispute between the parties.

It appears in evidence that the petitioner, who was about forty-one years of age and had been employed by the respondent for approximately fifteen years, suffered a severe pain in her back while working as a cementer on December 16, 1946. The petitioner testified, among other things, that on the above date in the course of her employment she pulled across a rough wooden floor toward the place where she was working a table upon which were about forty or forty-five trays containing rubber gloves to be cemented. She estimated that each trayful of gloves weighed about a pound and that she pulled the table a distance of from 10 to 12 feet. While so doing she felt a "kink" in her back which did not bother her "too much." Thereafter she continued her regular cementing work in the usual manner for an appreciable time during which she applied the necessary cement to the gloves contained in "quite a few" of the trays hereinbefore referred to. She then testified that "as I was lifting one tray over to the other table,

I got half-way over and I felt this pain—severe pain in my back"; and further that in moving a tray she had to "swing around to put it over to the other table * * *."

The evidence also discloses that owing to the severity of this pain the petitioner became temporarily unable to move or to call for help. However, an inspector in her department immediately noticed that she was in some difficulty and seated her in a chair. The foreman was called and he in turn communicated with the nurse at the plant hospital who arranged to have the petitioner moved to that place. There she complained of pain in her back, was put to bed, given heat treatments and a sedative and was later examined by Dr. Palmer, the plant physician, who strapped her back with tape. She was then taken home where she was attended by the doctor until January 7, 1947 when he told her he could do nothing more, whereupon she called her own physician Dr. Malinou who, a few days later, ordered that she be sent to the Miriam Hospital where she remained until February 2, 1947.

While there Dr. Malinou treated her for a sprained back and consulted an orthopedic specialist, Dr. Silver, who also examined and treated her. The last-named doctor found muscle spasm in the lower back, tenderness over the lumbar sacral joint, lesser tenderness over the sacroiliac joints and no tenderness over the sciatic nerve. X-ray photographs of the petitioner's back showed no injury but a "congenital anomaly—sacralization" of the right transverse process of the fifth lumbar vertebra. At the time of trial her condition had improved considerably but she was still being treated by Dr. Malinou and had done no work since December 16, 1946.

In cross-examination Dr. Malinou said that the petitioner, in giving him a history of the occurrence, told him that she "lifted a tray of rubber material from one table to another" and then felt a pain in her back. According to Dr. Silver's testimony, the petitioner stated to him that her job entailed the repeated lifting of trays of rubber

material weighing from five to ten pounds from one table to another twisting her body as she moved, and that on the morning in question "while at work she twisted with the tray from one side to the other, as she had done so many times," and felt a sudden severe pain in her lower back.

Witnesses for the respondent testified as to what the petitioner told them about the advent of the pain in her back. According to the inspector's testimony she "took the tray, turned around, and put it on the table" and then found herself unable to move back. The nurse testified she was told by the petitioner that "she didn't know how it occurred; she said the pain occurred suddenly" and also that "she didn't do anything unusual that she knew of at all, she couldn't understand what caused it." The testimony of the foreman was to the effect that he did not talk with the petitioner about the matter but that no claim of any accident was ever made to him. Testimony of a similar nature regarding the failure to report any accident happening to the petitioner at the time in question was given by the respondent's supervisor of workmen's compensation.

Under the provisions of our compensation act a personal injury to an employee to be compensable must have been sustained by accident arising out of and in the course of his employment. G. L. 1938, chap. 300, art. I, §1; art. II, §1. This court has held that the word "accident" as it is used in the act is to be understood in its popular and ordinary sense and means an unlooked-for mishap or untoward event which is not expected or designed. The court had occasion recently to consider at some length in *Parente* v. *Apponaug Co.*, 73 R. I. 441, the question of what constitutes an accident under the provisions of the act, and in that case pointed out at least three classes or types of injury which properly may come within the above-described meaning of that term. It seems unnecessary to repeat here what was set out fully in that case. See also *Zielonka* v. *United States Rubber Co.*, 74 R. I. 82.

In the instant case in arriving at his decision the trial justice reviewed the pertinent principles of law set out in cases heretofore decided by this court and, after applying such law to the evidence, came to the conclusion that the petitioner had not sustained a personal injury by accident. In particular he relied on the case of *Spolidoro* v. *United States Rubber Co.*, 72 R. I. 269. Upon consideration we find that his decision was without error.

The petitioner, however, argues that the alleged moving of the table containing a number of trays filled with rubber gloves as above described constituted an accident under the act within the meaning given to the word by this court, and that her subsequent back injury was due to such moving and developed from the so-called "kink" in her back incident thereto. It would appear from the evidence that this alleged happening was disclosed for the first time by the petitioner when she testified in this case. The trial justice in his decision seriously questioned whether or not such an incident as the pulling of the table ever occurred, but he pointed out that even if it did an appreciable time thereafter passed during which the petitioner had performed her regular work of cementing the rubber gloves and of moving the trays from one table to another in her usual manner, and that she suffered the severe pain complained of as she was performing the last-named act. The trial justice concluded, therefore, that there was no pulling of the table which had any connection with the injuries claimed to have been suffered, but that they were sustained while she was doing the same things in the same manner as she had always done them in carrying out her duties, and not because of the happening of any accident.

In our opinion there is legal evidence by way of direct testimony and also by reasonable inference to support the finding of the trial justice that there was no accident within the meaning of that term as used in the act and as construed in our decisions. Such a finding in the absence of fraud becomes conclusive. In our judgment the instant

case does not come within any of the types of cases referred to in *Parente* v. *Apponaug Co., supra,* but resembles in principle the cases of *Fuller Co.* v. *Schacke,* 71 R. I. 322, and *Fossum* v. *Fuller Co.,* 70 R. I. 191, in both of which compensation was denied.

The petitioner also contends for what she refers to as a liberal construction of the compensation act particularly with reference to the meaning of the term "accident" as used therein. In our opinion this court has heretofore construed that term as liberally as is consonant with giving it some meaning and effect in accordance with the plain intent of the legislature. Furthermore it has repeatedly pointed out that it ought not to place a construction upon the word "accident" which would practically eliminate it from the compensation act. If that result is desired it should be brought about by legislative action. See *Zielonka* v. *United States Rubber Co., supra.*

The petitioner also urges that she was prejudiced by two rulings of the trial justice in excluding certain questions asked by her attorney of Dr. Silver. We find in the reasons of appeal no ground specified on which to raise the issue of the correctness of such rulings. Therefore such issue is not properly before us and we need not consider it.

The petitioner's appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

*Edward A. Capomacchio, Uldrich Pettine,* for petitioner.

*Sherwood & Clifford, Sidney Clifford, Raymond E. Jordan,* for respondent.